# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4117 | **DATE** | 3/1/2001 |
| **CASE TITLE** | Liberty Live Assurance vs. Lindsey Savage et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant Britannia Holdings' Motion to Dismiss for Lack of Personal Jurisdiction

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    For the reasons stated in the attached memorandum opinion and order, this Court GRANTS Britannia's Motion to Dismiss for lack of personal jurisdiction [#11].

(11) ■ [For further detail see order attached to the original minute order.]

| X | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 0 2 2001 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | 20 |
| | Copy to judge/magistrate judge. | | |
| mrl | courtroom deputy's initials | MAR -1 PM date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 00 C 4117<br>)<br>) HONORABLE DAVID H. COAR |
| LINDSEY SAVAGE, ASSOCIATES TRUST, INCORPORATED, and BRITANNIA HOLDINGS, LTD. | )<br>)<br>)<br>) |
| Defendants | ) |

## MEMORANDUM OPINION AND ORDER

The Liberty Life Assurance Company of Boston sued one of its life insurance policy customers, and other companies involved in the resale of that policy. Liberty Life asked this Court to declare its rights and obligations with respect to the life insurance policy. Its confusion regarding its rights and obligations stems from the fact that its customer – Lindsey Savage – allegedly procured the policy by fraud. Britannia Holdings, Ltd, moved to be dismissed. Britannia says that this Court cannot constitutionally exercise personal jurisdiction over it because it lacks sufficient contacts with Illinois. For the reasons stated below, this Court GRANTS Britannia's motion and dismisses Britannia as a party to this suit.

### Introduction

Britannia is an investment company incorporated under the laws of Nevis, West Indies. Its principal place of business is in Gurnsey, an Island north and west of France in the English Channel. Britannia invests in a variety of start-up, venture capital, and other companies in the United States and around the world. Britannia is not licensed to transact business in Illinois, has no employees in Illinois, has never maintained offices, a telephone number, an address, or post office box in Illinois, and has never owned real estate in Illinois.

On October 28, 1998, Lindsey Savage, an Illinois resident, applied to Liberty Life for a life insurance policy with an $800,000 death benefit. Liberty Life issued the policy on November 24, 1998, and delivered it to Savage on December 14 of that same year. Britannia is an assignee of the life insurance policy previously owned by Savage. Savage entered into a viatical settlement that assigned his beneficial interest to Britannia so that he could effectively use a portion of the insurance policy's death benefit while he is still living.

Chronologically, at some time after the policy had been in effect, Savage hired a broker who contacted Associates Trust. In turn, Associates Trust contacted John Frick and Iowannes Holdings, LLC, who contacted Britannia. Thereafter, negotiations between Britannia, Iowannes, and Associates Trust ensued. A purchase price of $144,000 was finally agreed upon. Britannia wired this money to Associates Trust, who held the money in escrow. Associates Trust, a Florida corporation, carried out the assignment to Britannia after the policy had been issued to Savage. Savage received payment from Associates Trust from the escrow account. Britannia did not contact Savage or his broker during the negotiation with Iowannes to buy the Savage policy.

After being served with process, Britannia appeared specially to contest this Court's exercise of personal jurisdiction over it in this case.

**Analysis**

In Illinois, the plaintiff bears the burden of showing that personal jurisdiction exists. See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir.1997). The Court credits the allegations of the plaintiff's complaint unless the defendant controverts them by affidavits. The Court resolves factual disputes in favor of the plaintiff. But, if the defendant proffers facts that go unrefuted by the plaintiff, the Court takes these as true. See Turnock v. Cope, 816 F.2d 332, 333 (7th Cir.1987).

In cases where subject matter jurisdiction is based on diversity of citizenship, the Court looks to Illinois law to determine whether personal jurisdiction is proper. Id. at 334. Jurisdiction is proper in Illinois courts when: (1) the Illinois long-arm statute authorizes jurisdiction, and (2) when the requirements of the Due Process Clause of the United States Constitution are satisfied. FMC Corp. v. Varonos, 892 F.2d 1308, 1310 (7th Cir.1990). The Illinois statute authorizes jurisdiction on any basis permitted by the Illinois Constitution and the Constitution of the United States. 735 ILCS 5/2-209(c). Thus, Illinois law allows the exercise of personal jurisdiction over defendants if doing so comports with the due process provisions of both the federal and Illinois constitutions. See RAR, 107 F.3d at 1276. Britannia does not dispute that the Illinois long-arm statute has been satisfied, but only contests jurisdiction on due process grounds.

The limits that the Due Process Clause of the United States Constitution put on the exercise of personal jurisdiction depend on whether the Court seeks to assert general or specific jurisdiction over a non-resident defendant.[1] General jurisdiction allows a court to exercise personal jurisdiction over a non-resident defendant for activities that occur outside of the forum state when that defendant has also engaged in continuous and systematic activities in the forum state. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984). Specific jurisdiction allows a court to exercise personal jurisdiction over a non-resident defendant for forum-related activities where the relationship between the defendant and the forum falls within the traditional "minimum contacts" framework. See International Shoe Co. v. Washington, 326 U.S. 310 (1945). Liberty Life

---

[1] When a defendant's Illinois activities underlying the litigation serve as the basis for personal jurisdiction, courts call this "specific" jurisdiction. See Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414 n. 8 (1984); Giotis v. Apollo of the Ozarks, Inc., 800 F.2d 660, 666 n. 3 (7th Cir.1986). By contrast, when a defendant's overall activity in Illinois, not simply its actions with respect to the underlying transaction, are the basis, the jurisdiction is said to be "general." See Helicopteros Nacionales de Colombia, 466 U.S. at 414 n. 9.

has not asserted that Britannia is subject to general jurisdiction. Therefore, the Court will examine the contacts that Bittania has with Illinois but only those that relate directly to Liberty Life's cause of action seeking to invalidate the Savage life insurance policy.

"Specific jurisdiction turns on a particularized assessment of the 'relationship among the defendant, the forum, and the litigation.'" Saylor v. Dyniewski, 836 F.2d 341, 344 (7th Cir.1988) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). The defendant must have sufficient contacts with the forum state to comport with "traditional notions of fair play and substantial justice." See International Shoe, 326 U.S. at 316. The defendant must purposefully avail himself of the privilege of conducting activities in the forum state such that he invokes the benefits and protections of the law. Hanson v. Denckla, 357 U.S. 235. 253 (1958). The defendant's activities must be of the quality and nature that he would anticipate being haled into that jurisdiction's court. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980), and must not be merely "random, fortuitous, [or] attenuated." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985). In dicta, the Supreme Court has stated that forming one contract with a forum-state actor is not sufficient to subject the foreign party to the jurisdiction on the courts of that state. See Burger King, 471 U.S. at 478.

Because the transactions in this case occurred through brokers – Britannia never had any direct contact with Savage, the Illinois resident – Liberty Life argues (and Britannia has not disputed) that contacts with a forum state necessary to satisfy due process can be established either by the party itself or by the party's agent. Cf. 735 ILCS 5/2-209 (Illinois statue can be satisfied by the party or "through an agent"). Britannia, however, disputes the existence of an agency relationship between itself and any of the other defendants. The burden of showing an agency relationship lies with Liberty. Citicorp Sav. of Illinois v. Rucker, 692 N.E.2d 1319, 1325 (Ill. App. 1st Dist. 1998).

"Agency is a fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on [the principal's] behalf and subject to [the principal's] control, and consent by the other to so act." Restatement (Second) of Agency § (1958); see also Taylor v. Kohli, 642 N.E.2d 467 (Ill. 1994) (the principal factor to consider is the right to control the manner in which the work is done); see also Ingersoll Milling Machine v. J.E. Bernard & Co., 508 F. Supp. 907 (N.D. Ill. 1981).

Liberty Life has not shown that either Iowannes or Associated Trust acted as Britannia's agent. Neither Iowannes nor Associates Trust had authority to legally bind Britannia. Britannia did not control how Iowannes or Associates Trust conducted their business. All of the evidence suggests that both Iowannes and Associates Trust acted independently for their own benefit and not under Britannia's control or for Britannia's benefit. Britannia dealt with Iowannes when determining a price for the Savage policy and there is no evidence that Iowannes was working on Britannia's behalf to get a lower price for the policy. In sum, Liberty Life has not carried its burden in showing that the other defendants were acting as Britannia's agents in this transaction.

In the absence of an agency relationship, it becomes clear that Britannia does not have sufficient contacts with Illinois to permit the exercise of personal jurisdiction within due process limits. The facts in this case conjure up the hypothetical one-contract case that the Supreme Court mentioned in Burger King. There, the Court stated that in such cases, courts should look to the "prior negotiations and the contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether the party has purposely established contacts with the forum state. Burger King, 471 U.S. at 475-76.

First, Britannia did not engage in any negotiations with Illinois actors, let alone protracted negotiations. The entirety of the negotiations here involved Britannia proposing to Iowannes a

different price than it was first quoted and then ultimately agreeing to the initially-offered price. These are not protracted negotiations with an Illinois actor. Even the contacts that Britannia did have in reaching a final deal did not involve any Illinois actors. Iowannes contacted Britannia (not in Illinois) offering to sell the Savage Insurance Policy. Although it did state that the insured was an Illinois resident, Iowannes did not tell Britannia who the owner of the policy was or where the policy was issued. The undisputed evidence on this record shows that Iowannes and Britannia negotiated a price (outside of Illinois) for the Savage life insurance policy and those negotiations did not involve Savage's broker or Savage himself. This evidence supports the conclusion that far from purposely directing contacts towards Illinois, Britannia did all that it could to avoid contacts with Illinois.

Second, Britannia's purchase of the life-insurance policy benefitting Savage does not contemplate any ongoing relationship with people in Illinois. The only document to which Liberty Life points even remotely suggesting a continuing relationship is one about which Britannia knew nothing until this lawsuit was filed. Britannia, although mentioned as a party to this document, never signed the document. Liberty Life has not presented any evidence that Britannia was involved in this contract in any way, let alone engaged in Illinois actors to negotiate its terms. And, even the terms of the assignment contract do not evidence a contemplated ongoing relationship with an Illinois actor. Although the assignment states that Savage will be liable to Britannia for certain liabilities, there is no evidence that any liabilities existed or were contemplated by Savage.[2] When the death benefit comes due under the Savage life insurance policy, all that remains to be done is to disburse payments under the various contracts.

---

[2] Of course, the assignment does not say anything about what Britannia did or did not contemplate, because it knew nothing of the assignment prior to this suit.

This case stands in stark contrast to the facts of Burger King, where the parties engaged in protracted negotiations directly with one another and ultimately signed an agreement that contemplated an ongoing and complex business relationship. Instead, Britannia paid a lump-sum for the right to be the beneficiary of Savage's life insurance policy. Britannia simply does not have sufficient contacts with Illinois for jurisdiction to satisfy the requirements of the Due Process Clause.

Finally, finding insufficient contacts with Illinois, the Court also rejects Liberty Life's contention that Britannia should be subject to a lower standard for personal jurisdiction. Citing Burger King, Liberty Life argues that this is an appropriate case where "considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." 471 U.S. at 476. These other considerations are not present in this case.

This is a declaratory judgment action concerning the fraudulent procurement of an insurance policy. The fraud alleged is not Britannia's, but Savage's. All of the conduct relevant to the disposition of this case occurred before Britannia even arrived on the scene. Britannia might have a greater incentive to go after Liberty Life after Savage's death. And, Britannia might not be bound by *res judicata* with respect to the outcome of this case. But, if Liberty Life prevails, Britannia will face a substantial uphill battle in attempting to collect the proceeds from Liberty Life. It will have to contend with judicially-established facts of fraud by a deceased witness in any subsequent action for payment on the policy. Additionally, there is also no indication that Liberty Life will be unable to obtain all the relief it seeks from the remaining parties. As noted above, Britannia is unlikely to be the source of any evidence whatsoever in this case. Therefore, the Court rejects Liberty Life's contention that there are factors present that are sufficient to lower the standard due-process "minimum contacts" threshold.

## CONCLUSION

For the foregoing reasons, this Court GRANTS Britannia's motion to dismiss.

Enter:

_____
David H. Coar
United States District Judge

Dated: March 1, 2001